## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **STEPHANIE A. DESANNO**<br>**101 N. Wolfe Street, #542**<br>**Randallstown, MD 21231S** | * <br> * |
| ***Plaintiff,*** | * |
| **v.** | *    **Civ. Action No.: 1:16-cv-2772** |
| **DIAZ & ASSOCIATES, INC.**<br>**17862 E 17th St., Ste. 207**<br>**Tustin, CA 92780** | * <br> * |
| **Serve on:** | * |
| **Incorp. Services, Inc.**<br>**1519 York Road**<br>**Lutherville, MD 21093,** | * <br> * |
| ***Defendant.*** | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Stephanie A. DeSanno ("Ms. DeSanno") by and through undersigned counsel and for her Complaint against Diaz & Associates, Inc., alleges as follows:

### INTRODUCTION

1.    Plaintiff Stephanie A. DeSanno brings this action seeking redress for the illegal practices of defendant Diaz & Associates, Inc. ("Diaz") in connection with the collection of debts in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").

2.    The Plaintiff alleges that the collection practices of Diaz violate the FDCPA because it contacted third parties in order to collect a debt allegedly owed by the

Plaintiff, in violation of FDCPA § 1692c(b).

3.     Plaintiff seeks statutory damages, actual damages, attorneys' fees, and costs, pursuant to the FDCPA.

4.     The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress also found that existing laws and procedures for redressing debt collection activities were inadequate to protect consumers. 15 U.S.C. § 1692(b). Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e).

5.     The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties. The FDCPA imposes civil liability on any person or entity that violates its provisions and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

6.     The FDCPA is a strict liability statute that provides for actual or statutory damages, or both, upon the showing of one violation. The Fourth Circuit and other federal courts have held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *United States v. Nat'l Fin. Services, Inc.*, 98 F.3d 131 (4th Cir. 1996); *Clomon v. Jackson*, 988 F. 2d 1314 (2d Cir. 1993); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985); *Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991); *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988). The purpose of the least-sophisticated consumer standard "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Nat'l Fin. Services, Inc.*, 98 F.3d at 136 (quoting *Clomon v. Jackson*, 988 F.2d at 1318).

7.     The FDCPA is a remedial statute that is construed liberally in favor of the debtor. *See, e.g., Garcia-Contreras v. Brock & Scott, PLLC*, 775 F.Supp.2d 808 (M.D.N.C. 2011); S*prinke v. SB&C, Ltd.*, 472 F. Supp. 2d 1235 (W.D. Wash. 2006); *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006); *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

## JURISDICTION AND VENUE

8.     The jurisdiction of this Court is conferred by 15 U.S.C. § 1692k(d), and 28 U.S.C. 1331.

9.     The Plaintiff is a natural person and resident of the State of Maryland. She is a "consumer" as defined by 15 U.S.C.A. § 1692a.

10.    Defendant Diaz is a corporation headquartered in California and registered to do business in the State of Maryland, with a Resident Agent in Lutherville,

3

Maryland. Defendant Diaz also holds an active Collection Agency License with the Maryland Department of Labor, Licensing & Regulation.

11.    The United States District Court for the District of Maryland is the proper venue pursuant to 28 U.S.C.A. § 1391(b)(2) because the events giving rise to Plaintiff's Complaint occurred in the state of Maryland.

## PARTIES

12.    Plaintiff Stephanie A. DeSanno is an individual who is a "consumer" as defined in 15 U.S.C. § 1692a(3) of the FDCPA, as she is a natural person allegedly obligated to pay any debt, in this case alleged overdue payments for a retail credit card.

13.    Defendant Diaz is a corporation that engages in the practice of debt collection nationwide. The Diaz website states that, "At Diaz & Associates, Inc., providing outstanding collection services, and doing so with a high standard of customer service is our number one priority."[1] Diaz regularly collects and attempts to collect consumer debts incurred or alleged to have been incurred for personal, family, or household purposes on behalf of creditors and debt buyers, and uses the United States Mail in furtherance of its collection of debts alleged to be due another.

14.    At all relevant times, Diaz acted as a "debt collector" within the meaning of 15 U.S.C. § 1692a(6). Diaz's website contains the following disclosure:

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.[2]

The Diaz website also contains a second disclosure:

---

[1] Diaz & Associates, Inc., http://www.socaltrusted.org/diazassociatesinc (accessed July 31, 2016).

[2] *Id.*

Disclaimer: The purpose of this website is to provide contact information for Diaz & Associates, Inc. so that consumer debtors know how to communicate with Diaz & Associates, Inc. regarding their debt. As a debt collector, Diaz & Associates, Inc. may use any information obtained in communications with consumers to collect debts.[3]

## FACTUAL ALLEGATIONS

15.     Stephanie DeSanno allegedly incurred and later allegedly defaulted on a retail credit card obligation with HSBC Boscov's. This alleged debt will be referred to as the "subject debt."

16.     Diaz began calling Ms. DeSanno to attempt to collect the subject debt during May of 2016. According to Diaz, a "complaint" regarding this debt was "forwarded" to Diaz's office.

17.     During May, June, and July of 2016, Diaz telephoned Ms. DeSanno several times, and she spoke with Diaz roughly three or four times. Diaz left at least six voicemails on Ms. DeSanno's cell phone during this time period. Also during this time period, and in attempts to collect the subject debt, Diaz telephoned Ms. DeSanno's boyfriend at least twice after he called Diaz to request they stop contacting Ms. DeSanno; called Ms. DeSanno's employer at least once or twice; and telephoned Ms. DeSanno's father at least once.

18.     During Diaz's telephone calls with Ms. DeSanno, it never disclosed that it was a debt collector attempting to collect a debt, but simply stated that it had acquired a "claim" regarding Ms. DeSanno's "delinquent account" that had been forwarded to its office.

19.     Diaz also told Ms. DeSanno several times that it had sent her letters

---

[3] *Id.*

regarding the subject debt, but she never received any such letters.

20.     During one of her initial conversations with Diaz, Ms. DeSanno asked that

Diaz not contact her during the day because she works at a hospital. In response, the

caller, who identified himself as "Victor,' told her that there would be legal

repercussions if she did not resolve the alleged debt.

21.     Diaz telephoned the Plaintiff at least twice on her cell phone on or about

May 24, 2016, and left two voice mails. The first voicemail message was as follows:

> Good afternoon. This message is intended for Stephanie DeSanno.
> Stephanie, I'm calling in regards to a complaint. This complaint, which has
> been forwarded to my office for further and final recommendations of
> actions to be made. Unfortunately, I have left numerous messages. I have
> been trying to get in contact with you for quite a while in regards to this
> important matter. This is my last and only attempt before final actions and
> recommendations are made on this complaint.

The caller then gave Ms. DeSanno his telephone number and her file number, and

stated, "I highly recommend that you contact this office before final recommendations

are made."

22.     The second voicemail message was as follows:

> Good morning this message is intended for Stephanie DeSanno.
> Stephanie, this is Ernez [phonetic] calling on behalf of Diaz & Associates.
> I have been trying to get in contact with you. . . I have also been instructed
> to speak with you regarding a complaint which was forwarded to my
> office for further and final recommendations.

The caller then left a phone number and file number and requested that Ms. DeSanno

return his call.

23.     Diaz left Ms. DeSanno a third voicemail on May 26, 2016, stating that it

had been trying to get into contact with her and had sent letters. The caller indicated

that it "had not received the response as requested from either you or your attorney of

record," and stated that time was sensitive and limited "before final recommendations of action are taken on this matter." After urging Ms. DeSanno to contact Diaz immediately and leaving contact information, the caller threatened to contact Ms. DeSanno's employer regarding the subject debt.

24.     On or about May 31, 2016, a Diaz employee named Victor left another voicemail on Ms. DeSanno's cell phone, stating that he was calling in regard to her file and that she could contact him for more information.

25.     On or about June 14, 2016, a Diaz employee named Victor left another voicemail on Ms. DeSanno's cell phone stating that he had good news in reference to her file, and that Ms. DeSanno should call him.

26.     On or about July 12, 2016, Victor left another voicemail on Ms. DeSanno's cell phone leaving his contact information and her file number, requesting that she telephone him.

27.     On or about July 20, 2016, Diaz placed two telephone calls to Ms. DeSanno's cell phone—one at 3:15 p.m., and one at 3:16 p.m.

28.     At one point Ms. DeSanno had a conversation with Victor after he called her cell phone, during which he stated:

> I wanted to get in contact with you regarding your account here in our office. We are in the process of selling off a lot of our older inventory. We have had your account here for a few months now. And, I wanted to get in contact with you with a bit of good news. Being that your account is a little bit older, originally what you owed was only about $1600 in change and its added about $2,000 in interest, bringing it to about $3,600. But, what I wanted to run by you in an effort to get this removed from your credit reports. I can remove all the interest and set you up on payments for what was owed originally, the $1600 and change. Or, I'd be willing to offer you 50% of the original balance which is $803.81.

7

At this point, Ms. DeSanno told Victor that she had notified Maryland authorities that Diaz had been harassing her, her family, and her employer. In response, Victor asked, "Are you refusing to pay the bill?" In response Ms. DeSanno stated that she was pressing charges against Diaz, and Victor stated, "Uh huh, uh huh, are you refusing to pay the bill?" The conversation continued as follows:

> **Ms. DeSanno:**   I am pressing charges against you guys so I am letting you know that so no longer contact me. Thank you.
>
> **Victor:**       Are you refusing to pay the bill?
>
> **Ms. DeSanno:**   You have contacted my boyfriend, my family and violated my rights.
>
> **Victor:**       They contacted me.
>
> **Ms. DeSanno:**   And actually, you are incorrect. I have the phone calls and the records.
>
> **Victor:**       What can I do to try to help you to get this resolved? help you get this resolved?
>
> **Ms. DeSanno:**   Nothing, and that's fine. By the fact that you are still threatening me, this will be going to court.
>
> **Victor:**       Threatening you? How am I threatening you? How am I threatening you?
>
> **Ms. DeSanno:**   You are.
>
> **Victor:**       How am I threatening you?
>
> **Ms. DeSanno:**   You are.
>
> **Victor:**       How am I threatening you?

For the remainder of the conversation, Victor interrupted Ms. DeSanno to repeatedly state "Exactly," in a dismissive tone.

29.    During Ms. DeSanno's communications with Diaz employees and agents,

it threatened on several occasions to contact Ms. DeSanno's employer, and ultimately did call her employer during June of 2016.

30.    Ms. DeSanno learned of this contact when she was contacted by an executive of her company, which is a subsidiary of Johns Hopkins Hospital. The executive told Ms. DeSanno that a man from Diaz had called her and stated that a claim regarding Ms. DeSanno had been forwarded to his office. Ms. DeSanno does not have knowledge of what was said during Diaz's conversation with the executive, but knows that Diaz acted in such a manner that compelled the executive to notify Johns Hopkins security of the call. Diaz also spoke on the phone with a security guard, who later told the executive that the Diaz employee was "a complete asshole."

31.    Because Diaz had stated to the executive that a complaint regarding Ms. DeSanno had been forwarded to its office, she worried that her employer would think she was being sued, and therefore revealed information to the executive that she otherwise would have kept private. Diaz's telephone call to Ms. DeSanno's place of employment prompted her to reveal to an executive of her company that she was being harassed by a debt collector, which caused Ms. DeSanno a great deal of embarrassment.

32.    Immediately after Diaz contacted her employer, Ms. DeSanno called Diaz and requested to speak with a manager. She was connected to a man who sounded like "Victor" who had called her previously. She asked him to stop contacting her employer, and he told her that she needed to resolve the alleged debt.

33.    Around this time, Ms. DeSanno's boyfriend also telephoned Diaz to ask that it honor Ms. DeSanno's request that it stop contacting her and her employer. Ms. DeSanno's boyfriend explained to Diaz that its communications to Ms. DeSanno and

employer were harassing, and causing her hardships and stress to herself, and he asked that Diaz stop calling Ms. DeSanno. Ms. DeSanno's boyfriend also sent Diaz a letter containing the same information and request that Diaz stop contacting Ms. DeSanno.

34.     Rather than honor the request of Ms. DeSanno's boyfriend, Diaz used his cell phone number to continue to contact him. When Diaz called Ms. DeSanno's boyfriend, it told him that a "claim" regarding Ms. DeSanno had been forwarded to its office, and threatened "dire legal consequences" if she did not settle the matter.

35.     On or about July 25, 2016, Ms. DeSanno, through undersigned counsel, mailed and faxed Diaz a letter requesting that it immediately cease and desist communication with her, stated that she disputed an obligation to pay the subject debt, and demanded verification of the subject debt.

36.     Diaz mailed undersigned counsel a response letter on or about July 26, 2016, stating that, "Our firm [Diaz] was informed that there is no documentation available from the original issuer."

37.     Diaz's actions have caused Ms. DeSanno immense frustration, embarrassment, and emotional distress. Ms. DeSanno is deeply embarrassed that her employer and family members have been notified of the subject debt, and have been led to believe that Ms. DeSanno has been sued.

38.     Diaz's repeated statements that a "complaint" regarding Ms. DeSanno had been forwarded to its office also confused Ms. DeSanno as to whether legal action had been taken against her, and caused her to constantly fear that Diaz would invoke legal remedies, when in reality, Diaz had no right to do so.

39.     Most importantly, Diaz's actions caused Ms. DeSanno to feel harassed and

disrespected. She was frustrated that her repeated requests that Diaz stop contacting her were ignored, and seemed to only cause Diaz to call her more and locate more third parties to contact regarding the subject debt.

**COUNT I**
**Violation of the Fair Debt Collection Practices Act**

40.    Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

41.    The subject debt is a "debt" as that term is defined by 15 U.S.C. § 1692a(5), as it allegedly arose out of a transaction for money, service or property that was primarily for personal, family and/or household purposes. Specifically, the debt relates to a personal retail credit card.

42.    In its attempts to collect the subject debt Defendant materially violated FDCPA § 1692c(a)(3) because it telephoned Ms. DeSanno's employer in order to collect the subject debt.

43.    In its attempts to collect the subject debt Defendant materially violated FDCPA § 1692c(c)(b) because it communicated with multiple third parties, including Ms. DeSanno's boyfriend, father, and employer, in order to attempt to collect the subject debt.

44.    In its attempts to collect the subject debt Defendant materially violated FDCPA § 1692d because it caused Ms. DeSanno's cell phone to ring repeatedly in an attempt to annoy, abuse, and harass her.

45.    In its attempts to collect the subject debt Defendant materially violated FDCPA § 1692e(5) because it threatened to initiate legal proceedings against Ms. DeSanno with no intent to do so. Diaz told Ms. DeSanno numerous times that its

telephone call would be the final call before taking further action, but the calls continued and no "further action" or "dire legal consequences" followed. Furthermore, Diaz had no right to take any of the legal actions it threatened because it had absolutely no documentation from the original creditor for the subject debt.

46.     In its attempts to collect the subject debt Defendant materially violated FDCPA § 1692e(10) because in its attempts to collect the subject debt, it falsely represented to Ms. DeSanno several times that a "complaint" had been brought against her.

47.     In its attempts to collect the subject debt Defendant materially violated FDCPA § 1692g because it failed to send Ms. DeSanno a written notice containing the amount of the subject debt, the original creditor for the subject debt, a statement informing Ms. DeSanno that she had the right to dispute the subject debt, a statement notifying Ms. DeSanno that she had the right to request verification of the subject debt, and a statement that Diaz would provide the name and address of the original creditor if different from the current creditor for the subject debt.

48.     As a direct consequence of the Defendant's acts, practices, and conduct, the Plaintiff became embarrassed, nervous, worried, upset, and concerned about the potential for future contact revealing information regarding her personal financial situation to her family members.

49.     Pursuant to FDCPA § 1692k Plaintiff is entitled to statutory damages and actual damages for frustration and aggravation.

WHEREFORE, Plaintiff respectfully requests the following relief:

a.      A judgment for actual damages relating to Plaintiff's frustration and

aggravation pursuant to pursuant to 15 U.S.C. § 1692k(a)(1), in an amount currently estimated to be in excess of $75,000.00;

b.      A judgment for statutory damages required by to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00;

c.      A judgment awarding Plaintiff her costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d.      An order for such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of attorneys' fees and litigation costs to be awarded should Plaintiff prevail on any of her claims in this action.

Dated: August 5, 2016                          Respectfully Submitted,


/s/  E. David Hoskins
E. David Hoskins, Esq., No. 06705
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
davidhoskins@hoskinslaw.com


/s/ Doris N. Weil
Doris N. Weil , Esq., No. 19679
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
dorisweil@hoskinslaw.com